UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

| | |
|---|---|
| HVT, INC., | Case No.: 1:15-cv-05867 (MKB) (VMS) |
| Plaintiff, | |
| -against- | **DECLARATION OF MICHAEL A. ROSENBERG IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |
| PORT AUTHORITY OF NEW YORK AND NEW JERSEY, | Electronically Filed |
| Defendants. | |

----------------------------------------------------------x

MICHAEL A. ROSENBERG, an attorney duly licensed to practice law in the State of New York, and before this Court, declares under the penalty of perjury, and pursuant to 28 U.S.C. § 1746, that the following statements, with exhibits, are true:

1. I am the lead attorney of record for the Plaintiff, HVT, INC. ("HVT").

2. I make this Declaration in support of the Plaintiff, HVT's application for an Order awarding reasonable attorneys' fees and costs pursuant to this Court's Order made and entered March 21, 2018, finding the Plaintiff to be the "prevailing party". I am fully familiar with the facts and circumstances herein by reason of my conversations with Plaintiff's representatives, and further by my independent examination of the file relative to this litigation, and my personal involvement in prosecuting this case.

3. I have read the Declaration of my colleague and co-counsel, RUDOLPH J. MEOLA ("MEOLA") and that Declaration is incorporated by reference herein. The Court should note that MR. MEOLA has been a successful practitioner, with offices in Albany, New York for over 25 years. He is recognized as a prominent authority representing lessors and lienholders engaged in automotive financing rights, especially those clients whose property has been the subject of claims for detention, forfeiture and fees by municipal claiming authorities

1

seeking to impress their liens. MR. MEOLA currently represents automotive finance entities in hundreds of lien, vehicle seizure, impound and forfeiture cases filed by New York City, Nassau and Suffolk Counties. Our "of counsel" relationship has been in place for approximately 15 years, and there is significant overlap of both our expertise and client roster.

  4. Since the late 1990's, my practice has consisted of representing innocent owners/lienholders whose property has been placed in jeopardy of loss by seizure and deprivation by claiming authorities and others, exerting liens for violations of law, towing, repairs, storage and the like. We have, over the course of our representation engaged in hundreds of cases involving the questions of law presented in this matter. In that regard, the firm has proudly been permitted to advocate for a number of traditional lenders (Banks) as well as financing arms of automobile manufacturers. Included on our roster of clients in the automotive industry are AMERICAN HONDA FINANCE CORPORATION, BMW FINANCIAL SERVICES, CHRYSLER FINANCIAL SERVICES, FIDELITY BANK, HYUNDAI MOTOR AMERICA, MERCEDES-BENZ CREDIT CORPORATION, NISSAN MOTOR ACCEPTANCE CORP., TD AUTO FINANCE, and TOYOTA FINANCIAL SERVICES. Additionally, we have performed services in this area for some traditional lenders including, ALLY FINANCIAL, ALTURA CREDIT UNION, CREDIT UNION 1, FIDELITY BANK, IDB BANK, M&T BANK, SANTANDER BANK, SUFFOLK COUNTY NATIONAL BANK, VANTAGE CREDIT UNION and WESTERN FEDERAL CREDIT UNION.

  5. While we are admittedly a small firm, we nonetheless count a significant number of major corporate entities as a part of the practice having this very area of concern: deprivation of property without due process. We have "crossed swords" with any number of claiming authorities, including this one and the NYPD, Nassau and Suffolk Counties, the City of Yonkers, the Department of Justice and the Drug Enforcement Agency.

6. It was in that connection that MR. MEOLA and I first became working colleagues. His practice too involves working in the framework of innocent owner/lienholder protection. We have been fortunate to enjoy an overlap of client companies, including the present Plaintiff, HVT, a wholly owned subsidiary of, and the leasing arm of AMERICAN HONDA FINANCE CORPORATION. Even though we have each rendered services to this particular Plaintiff individually, this matter, at the client's request, gave us the opportunity to combine our areas of expertise to the benefit of this mutual client. This is not, however, the first time our talents have been called upon for this client, and in particular, with this Defendant, the PORT AUTHORITY OF NEW YORK and NEW JERSEY ("PANYNJ").

7. In or about 2009, the Defendant, PANYNJ was also the Defendant in the matter of *American Honda Financial Corporation V. Sharnjit S. Manhaini, And The Port Authority of New York and New Jersey*, 24 Misc. 3rd 745 (2009). The underpinning of that litigation in the Supreme Court, New York County, was also the issue of charges imposed upon the owner of a vehicle for towing and storage arising out of the Defendant, PANYNJ's proper exercise of its police power. While our client recognized the need to protect the public, the matter was nonetheless strongly contested, and ultimately resulted in a determining decision by Justice NICHOLAS FIGUEROA, a copy of which is annexed as Exhibit "A". That litigation, which I argued, together with the resulting decision, was the genesis of this particular matter. This dispute, on behalf of this Plaintiff, HVT, and others similarly situated, has been percolating for a long time. The facts in the present matter simply allowed for the case finally to be filed. Attempts at reconciliation with the Defendant, PANYNY, on an *ad hoc* basis, over the extensive period of time since the *Manhaini* decision, were to no avail. Only the institution of suit, and Court intervention, would solve the problem.

8. Here, in this matter, MR. MEOLA had the original client contact for this present litigation. It was he who was first approached regarding taking this Defendant, claiming authority to task over its inadequate procedures and failures to provide procedural due process to innocent owners/lienholders. The lingering complaint about placing in jeopardy its property or having that property "held hostage" unless and until overly large and improper charges were paid for that property's release was finally going to be addressed. This litigation was not just a hastily thrown together set of documents. Rather, this was a carefully calculated and thought-through process over a period of several months during the Fall of 2015. The process between co-counsel, MR. MEOLA, and the client, HVT was structured only after extensive planning and research ultimately coming together as an exacting and well-designed approach. Before the Summons and Complaint were ever filed and served, the Plaintiff and counsel, including the client's, had already established a "game-plan" for the contemplated suit. As a matter of fact, as part of the pre-suit planning, counsel considered what the Defendant, PANYNJ, would contemplate by way of defenses, including, but not limited to, making a Pre-Answer Motion to Dismiss.

9. It was after the client was thoroughly convinced, after extensive consultation with MR. MEOLA, in light of his substantial expertise, that affirmative and proactive measures were taken to stop the ongoing deficient practices of the Defendant. This client, HVT, had for many years, gone through the onerous process imposed by the Defendant, PANYNJ. Now, it had reached the proverbial "end of its tether". Over those many years, the client, HVT, was compelled to pay substantial sums of money to have its property released from the ransom process. Shortly thereafter, and in or about the latter part of September, 2015, I was contacted by MR. MEOLA on behalf of our mutual client, to bring my experience in the area to bear on the contemplated action. In consultation with the client, and MR. MEOLA, I was asked to join the team and undertake the prosecution of the litigation. It was agreed that because of my presence in New York City, my years of expertise, and my admission in the Eastern District, that it made

4

sense for me to be lead attorney. That, and in an effort to avoid duplicative and overlapping services, MR. MEOLA and I would consult on the division of labor, each focusing on certain aspects throughout the case's progression. While we communicated almost daily on the progress and development of the litigation, I relied on his office to keep the client abreast of proceedings, and to secure documents and information as needed. I also relied on his office to input and contribute on all drafting, research and fact verification during the preparation of documents.

10. The ability to make application for attorneys' fees and costs arises from the Court's Order of March 21, 2018 determining that our client, the Plaintiff, HVT, was the "prevailing party" and speaks to our entitlement. The reasonableness of our hourly rate and the extensive hours invested may be judged by the Court as to their necessity. Our time expenditure, maintained contemporaneously with the service rendered, are, I believe, accurate representations of our work product and results, and were, in all ways, reasonable under the circumstances.

11. We are not unmindful of this Court's guidelines (*Sass v MTA Bus Co.*, 6 F. Supp3rd 238 (Margo K. Brodie); *Medina v Donaldson*, 10 Civ. 5922 (Vera M. Scanlon) 2015 WL 77430), employed when assessing fee applications. We believe that we have, and will continue subsequently, to present the necessary elements to be considered for an award:

- Success on the significant issues litigated deriving significant benefit to the Plaintiff;
- The results obtained, even if the dispute was over principle and more than simply financial;
- The difficulty of the underlying issues in the matter;
- The nature and extent of the services, the reasonable time expended, and at reasonable rates;
- The quality of the services performed; and
- The qualifications and expertise of counsel.

12. I have been admitted to practice before the Supreme Court, Second Department since in or about October, 1970. I also hold admissions in the Southern and Eastern Districts, as well as the Supreme Court of the United States. My firm, established in 1974, and albeit small, has had extensive litigation experience, and in particular, in matters concerning due process in matters involving impound of automobiles by claiming authorities. I too have been extensively involved in representing innocent owners/lienholders whose property has been subjected to adverse claims of seizure/forfeiture and alleged liens for the improper assessment of charges for towing and storage.

13. My firm, along with several others, including MR. MEOLA, was instrumental and among the primary strategists for the automotive finance class action entitled *General Motors Acceptance et al., v County of Nassau*, E.D.N.Y. 2:03-01177-ADS, which resulted in revocation of and the revision of Nassau County's forfeiture law, which original forfeiture statute was declared unconstitutional. My firm represented, BMW FINANCIAL SERVICES, as one of the named Plaintiffs. We both were engaged in the negotiations with then County Attorney, Lorna Goodman, Esq. in revising the County's statute and procedures so that the same would be constitutionally conforming. We were also involved in the matter of *Kapiti v. Kelly* (again for American Honda) in the District Court, Southern District 2008 U.S. Dist. Lexis 20135 S.D.N.Y (wherein Judge Richard Berman likewise found the need for due process protection of innocent owners/lienholders). Additionally, I successfully prosecuted a Counterclaim against the Property Clerk Of The City Of New York in the matter of *Property Clerk v. BMW Financial Services*, 293 $AD^{2d}$ 378. That case, having gone to the Appellate Division, First Department, upheld Justice MARTIN SHULMAN's decision below, and determined certain rights of innocent lessors, and their need for procedural due process in matters involving seized vehicles held for forfeiture. Even though the Trial Court had awarded substantial counsel fees in my favor pursuant to a Rule 130 Sanction against New York City, the Appellate Division, following the 911 attack, reversed that sanction. Our client was, however, received $75,000.00 on its Counterclaim, and

6

simultaneously had portions of the New York City's procedures likewise declared unconstitutional, requiring revision. Those revisions led directly to the employment of New York City's administrative hearing facility known as OATH. More recently, in the Southern District, I prosecuted the action entitled *Toyota Motor Credit Corporation v. County Auto & Commercial Towing, Inc., et. al.*, 7:15-cv-08419-VB. While the fact pattern was somewhat different, the underlying controversy and principles were basically the same. In that matter, I successfully negotiated a satisfactory resolution with both the claiming authority, and the Co-Defendant.

14. When looking back on the instant matter, one can readily see that two (2) seasoned practitioners, well-versed in the concept of due process, handled the litigation with extensive pre-suit preparation; with a minimal, (if at all) of overlapping services; with a view towards negotiated resolution, and with an awareness of the Court's sensitivities to fee applications.

15. Early in the litigation, we tried, albeit unsuccessfully, to resolve the question of due process and constitutionality with the Defendant. Notwithstanding the unavailability of a negotiated and satisfactory outcome, the matter was handled most efficiently and as cost effectively as possible. In that regard, we are proud to say:

- There were minimal out-of-pocket expenses;
- There was no excessive Motion Practice;
- There was no burdensome or excessive discovery;
- There was an streamlined handling of Motion Practice, without excessive requests for extensions.

It should be noted that a Motion to post a bond was drafted and prepared, was not filed because the Defendant's counsel, after review, voluntarily consented to the relief. The time, however, was nonetheless expended. The Court's official docket entries are a testament to the efficiency of Plaintiff's counsel's manner in which the litigation proceeded.

7

16. Notwithstanding the paucity of docket entries, the Court should not be mislead in believing that extensive thought and effort did not go into this matter pre-suit, and during the life of the litigation. The proof of that belief is highlighted by Magistrate Judge VERA M. SCANLON's analysis contained in her thirty-one (31) page Report and Recommendation.

17. The results achieved by Plaintiff, HVT, and its counsel, was nothing short of extraordinary. The extensive pre-suit strategizing and research, together with our prior experience with this Defendant, PANYNJ, achieved an impressive result over a matter not previously addressed by this, or any other Court. This Court, by its Report and Recommendation dated February 15, 2018, agreed with, on a quantitative basis, ninety-nine (99%) percent of the Plaintiff's case and arguments. There were only two (2) in person Court appearances, a singular telephone conference, minimal discovery, coupled with well-researched and briefed Motion Practice. The result achieved was both ground-breaking and was secured with a minimum of Court intervention.

18. Further, Magistrate SCANLON indicated, at page 23 *et. seq.* of the Report and Recommendation, that had she been asked, although she had not, she would have had difficulty with the due process aspect of the New York State Lien Law. It was this statute upon which the Defendant, PANYNJ, most heavily relied in *Manhaini, supra*, as well as here, all to no avail. While this matter was not the typical fact pattern surrounding civil rights violation cases, the results obtained were significant, and have far-reaching implications. Not addressed in this matter while the lien law statute remains in place is the import of this decision which could prospectively lead to other cases being filed, including the potential for class-action proceedings. This decision falls squarely and neatly within the precedents by the Second Circuit's other decisions in this area such as *Ford Motor Credit, Krimstock* and *Harrell*. Due process must, under all circumstances, be observed.

## PROCEDURAL BACKGROUND

19. As noted above, the official docket for this case does not contain an overwhelming number of entries. It does, however, reflect that the proceeding commenced on or about October 13, 2015, and continued for a period of almost three (3) years. During most of that period, I had interacted primarily with MARGARET TAYLOR-FINUCANE, ESQ. ("FINUCANE"), as lead attorney for the Defendant, PANYNJ. Most of the subsequent interaction with KARLA D. DENALLI, ESQ. ("DENALLI") arose just prior to the submissions of Plaintiff, HVT's Motion for Summary Judgment and the Defendant, PANYNJ's Cross-Motion (April 26, 2017). The Court will note that it was with MS. DENALLI that exchanges occurred post the Report and Recommendation, and the subsequent Court Order of March 21, 2018. All time to be considered here will be through the making of this application, and the Plaintiff, HVT has specifically requested permission to make further applications where required.

### A. PLEADINGS

(i) This action was commenced on or about October 13, 2015 by Plaintiff, HVT, filing its Civil Cover Sheet, Summons and Complaint;

(ii) Service of the pleadings were effectuated upon the Defendant, PANYNJ, on or about October 20, 2015;

(iii) The Defendant, PANYNJ, appeared by counsel, FINUCANE, on or about October 26, 2015;

(iv) On or about January 13, 2016, after securing an extension of time to answer, the Defendant, PANYNJ, interposed its Answer containing seven (7) Affirmative Defenses. I filed my Notice of Appearance on or about January 20, 2016.

## B. COURT CONFERENCES/ORDERS

(i) The parties having filed a Proposed Scheduling Order appeared, on or about January 29, 2016, for an Initial Conference before the Hon. Magistrate Judge VERA M. SCANLON;

(ii) That conference resulted in a subsequent telephone conference on March 29, 2016. The purpose, among others, was to determine if the Defendant would voluntarily create new policies to resolve Plaintiff's due process issues and concerns. Even though the Plaintiff had offered to resolve the litigation prior and at that stage, provided new policies would be put in place, no resolution was achieved;

(iii) On or about July 13, 2016, the parties appeared before the Hon. District Court Judge, MARGO K. BRODIE for a pre-Motion Conference. The Court directed Summary Judgment Motion Practice to be bundled, and filed by October 27, 2016; and

(iv) On or about April 26, 2017, the Court referred the Motion and Cross-Motion to Magistrate Judge SCANLON. Final submissions were to be made on or before July 14, 2017.

## C. DISCOVERY

(i) After the initial Scheduling Order, and the failed attempts at resolution, the parties engaged in an exchange of discovery devices in an effort to narrow the scope of the litigation;

(ii) The Plaintiff, opining that the issue was fairly straight forward, believed that any discovery required should not be extensive.

Thereafter, Plaintiff filed its Rule 26 Initial Disclosure, together with Plaintiff's First Set Of Interrogatories. The Plaintiff, HVT, was fairly parsimonious with the propounding of interrogatories, and limited those interrogatories to four (4), each containing multiple parts. The Defendant, PANYNJ, for its part likewise filed its Rule 26 Initial Disclosure, and made a Document Demand and a Demand For Interrogatories. The Court's official docket does not reflect any of the discovery in this matter simply because none of the discovery devices required filing;

(iii) While the docket does not reflect any information regarding discovery, during the period February 11, 2016 and March 10, 2016, each of the parties served their discovery responses including responses to interrogatories and fulfilling any document production. While that thirty (30) day period appears "brief" on its face, the actual fulfillment portion was both extensive and time consuming. That time expenditure is appropriately reflected in the category of time records made a part of this application.

### D. MOTION PRACTICE

(i) Plaintiff and Defendant each moved for Summary Judgment on or about October 27, 2016; and

(ii) On or about February 15, 2018, the Hon. Magistrate Judge VERA M. SCANLON issued her Report and Recommendation granting to the Plaintiff, HVT, Summary Judgment, in part, and denying Defendant, PANYNJ Summary Judgment, except as to a small administrative charge; and

(iii) On or about March 21, 2018 the Hon. District Court Judge MARGO K. BRODIE issued an Order adopting the Report and Recommendation, in full, and without there being any objections thereby precluding any appeal.

### E. THE INSTANT APPLICATION

20. The Court's Order entered March 21, 2018 directed the parties to jointly cooperate on revising the Defendant, PANYNJ's, regulations and procedures. The original time period for that cooperation was to have been within sixty (60) days of the Order. That deadline has since been extended, on consent of the parties, by the Court's Order dated May 1, 2018 (ECF #35) until September 18, 2018.

21. As to the other issues remaining as a result of the March 21, 2018 Order, most have been resolved amicably by negotiation. The issue of the Plaintiff's entitlement to compensatory damages has been mutually disposed of, eliminating further Court intervention or protracted Motion Practice with respect to that aspect.

22. The remaining issue re: attorneys' fees, however, was not, and could not be resolved by negotiation, necessitating this application. The parties tried, but failed to reach an accord, and we now ask the Court, in light of its precedent and guidelines, to address the compensation and costs to be awarded to Plaintiff, HVT's counsel.

23. I respectfully request that the Court examine the contemporaneous time records kept for services rendered in this matter, preserving our ability to again make further application for time expended in further prosecuting this Motion (opposition review and reply) and subsequent to this Motion. There will be significant time yet to be accounted for in order to comply with the Court's directive that the parties mutually cooperate in arriving at new procedures and proposed regulations consistent with the Report and Recommendation.

24. Therefore, and with all of the above having been said, I respectfully direct the Court's attention to our Exhibit "B", and attachments, which present, in concise form, the reasonable time expended in this matter, the reasonable rates for that time, together with the receipted out-of-pocket expenses incurred in prosecuting this action, and in making this application.

WHEREFORE, on the basis of the foregoing, and the accompanying Declarations, Exhibits and Memorandum of Law, submitted on Plaintiff, HVT's behalf, as the prevailing party, and to its counsel, your Declarant respectfully requests that the Court make and enter and Order as follows:

 (a) Granting the relief requested in all respects;

 (b) Granting Plaintiff, HVT's request that the Court grant to its counsel the full amount of its reasonable attorneys' fees and costs, including those incurred in making this application;

 (c) Granting Plaintiff, HVT, and counsel the right to make further applications for all fees and costs incurred to further conclude this Motion, and subsequent to this application through and including termination of the case in chief; and

 (d) Granting such other and further relief this Court may deem appropriate.

24. Therefore, and with all of the above having been said, I respectfully direct the Court's attention to our Exhibit "B", and attachments, which present, in concise form, the reasonable time expended in this matter, the reasonable rates for that time, together with the receipted out-of-pocket expenses incurred in prosecuting this action, and in making this application.

WHEREFORE, on the basis of the foregoing, and the accompanying Declarations, Exhibits and Memorandum of Law, submitted on Plaintiff, HVT's behalf, as the prevailing party, and to its counsel, your Declarant respectfully requests that the Court make and enter and Order as follows:

(a) Granting the relief requested in all respects, and awarding counsel fees as permitted by the Court;

(b) Granting Plaintiff, HVT's request that the Court grant to its counsel the full amount of its reasonable attorneys' fees and costs in the sum of $408,708.68, including those additional attorneys' fees to be incurred in making this application;

(c) Granting Plaintiff, HVT, and counsel the right to make further applications for all fees and costs incurred to further conclude this Motion (any opposition and reply, and, subsequent to this application, through and including reasonable time spent in concluding the case in chief; and

(d) Granting such other and further relief this Court may deem appropriate.

13


Dated: New York, New York
May 21, 2018

*[signature]*

MICHAEL A. ROSENBERG, ESQ. (8870)
**Attorney for Plaintiff**
HVT, Inc.
rosenbergesq@aol.com
875 Third Avenue, 8th Floor
New York, New York 10022
Phone: (212) 972-3325

TO: James M. Begley, Esq.
Karla D. Denalli, Esq.
**Attorneys for Defendant**
**The Port Authority of New York and New Jersey**
Kdenalli@panynj.gov
4 World Trade Center
150 Greenwich Street, 24th Floor
New York, New York 10007
Phone: (212) 435-3834

14