UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

HVT, INC.,

                    Plaintiff,

    -against-

PORT AUTHORITY OF NEW YORK AND
NEW JERSEY,

                   Defendants.
-------------------------------------------------------------X

Case No.: 1:15-cv-05867 (MKB) (VMS)

**NOTICE OF MOTION FOR
ATTORNEYS' FEES AND COSTS**

Hon. MARGO K. BRODIE

Electronically Filed

# PLAINTIFF'S EXHIBITS IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND COSTS

Dated: New York, New York
May 21, 2018

Respectfully submitted,

Michael A. Rosenberg (8870)
**LAW OFFICE OF MICHAEL A. ROSENBERG**
Counsel for Plaintiff HVT, INC.
rosenbergesq@aol.com
875 Third Avenue, 8th Floor
New York, New York 10022
Phone: (212) 972-3325

1

*American Honda Finance Corporation v. The Port Authority of New York and New York,* 24 Misc 3d 745 (2009) Justice Nicholas Figueroa

# Exhibit "A"

24 M.sc 3d 745 (2009)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK : PART 46
---------------------------------------X
In the Matter of

AMERICAN HONDA FINANCE CORPORATION,

                Petitioner,              **DECISION AND JUDGMENT**

      -against-                  Index No.: 600342/09

One 2008 Honda Pilot, VIN: 5FNYF18578B018094,
defendant-in-rem, SHARNJIT S. MANHAINI and
THE PORT AUTHORITY OF NEW YORK AND
NEW JERSEY,

                Respondents.
---------------------------------------X

Nicholas Figueroa, J.S.C.:

     Petitioner, a finance company in possession of an automobile lien, seeks an order directing that the subject 2008 Honda Pilot vehicle be released to it by the Port Authority of New York and New Jersey, which has had the vehicle in its possession since December 2007. The Authority claims that it is entitled to keep the vehicle until petitioner pays over $25,000 for towing and storage. The owner of the vehicle, who has long been in default on his auto loan, was served with notice of this proceeding, but has not appeared.

     Petitioner has held its perfected security interest since October 2007, on a purchase money loan of approximately $40,000. Under the terms of this financing contract, petitioner automatically became entitled to possession upon the owner's failure to make the second monthly payment on the loan.

     The Honda was impounded by Port Authority police on December 28, 2007, at John F. Kennedy Airport, as a vehicle being used in connection with a criminal activity (the unlawful

solicitation of passengers for ground transport). Petitioner does not dispute that it is the policy of JFK Airport management pursuant to Port Authority regulations to detain vehicles towed and stored under certain circumstances until the Authority's fees for such services have been paid. Petitioner maintains, however, that the New York State Lien Law does not allow the Authority to withhold the vehicle from a secured creditor such as petitioner under the present circumstances.

The statute in question is section 184 of New York's Lien Law. Its provisions create a lien in certain bailees where the common law recognized none. In relevant part the statute provides as follows:

> (2) A person who tows and stores a motor vehicle at the request of a law enforcement officer authorized to remove such ... vehicle shall be entitled to a lien for the reasonable costs of such towing and storage, [provided certain notice is given to the owner]....
>
> (5) A person who [meets the requirements of subdivision two] ... and who seeks to assert a lien for the storage of such ... vehicle ... shall mail by certified mail, return receipt requested, a notice pursuant to this subdivision to every person who has perfected a security interest in such ... vehicle ... within twenty days of the first day of storage. Such notice shall include [inter alia] the name of the person providing storage ..., the amount being claimed ..., and address and times at which the ... vehicle may be recovered.... A person who mails such notice within such twenty day period shall be entitled to a lien for storage from and after the first date of storage. A person who fails to mail such notice within such twenty day period shall only be entitled to a lien for the amount payable for storage from and after the date the notice was mailed.... A failure to mail such notice in a timely fashion shall not affect a lien for towing.

Petitioner alleges that the Authority has never given it the type of notice prescribed by subdivision (5) of section 184. The Authority for its part does not claim to have given petitioner such notice. The record is clear, however, that petitioner had actual notice of the impoundment by May 28, 2008. Since then, the Authority has continued to assess daily storage fees, from

2

December 28, 2007, to date, initially at the daily rate of $100. Early on, the Authority suggested in effect that petitioner buy the Honda's release by paying the outstanding amount under protest, a proposition that petitioner rejected.

The threshold question is whether the Authority, as a bi-State agency, is governed by section 184. The Authority was created in 1921 pursuant to a compact between New Jersey and New York, as formally ratified by the United States Congress (L.1921, ch. 154, s. 1; N.J.S.A.. § 32:1-1 *et seq.*; 42 U.S. Stat. 174). Under the compact, the Authority is empowered to conduct its affairs pursuant to its own rules and regulations, and its operations are not subject to a unilaterally enacted statute of either State (such as section 184) if application of that statute would impinge upon the Authority's intended autonomy under the bi-State compact (*see Agesen v Catherwood*, 26 NY2d 521, 525).

To the extent relevant here, the Authority's self-governance at JFK Airport is expressed briefly in its regulations (21 NYCRR §§ 1260 *et seq.*), as explained in its publication, "Airport Rules and Regulations" (issued 7/22/06). Under section 1262.16 of the regulations, the Airport Manager is permitted to "remove from any area of [the] ... terminal any vehicle which is disabled, abandoned, parked in violation of the ... regulations ... or which presents an operational problem, to any other area at the terminal and may store the same thereat, all of the foregoing being at the owner's or operator's expense...." Thus, subparagraph (17) of subdivision (b) of Article VI of the Authority's publication explains that, "A vehicle which has been placed in the lawful possession of the ... Authority ... for any ... reason, and in respect of which any fee or charge, including towing and storage charges, are due, may be detained by the Airport Manager until said fees or charges have been paid."

3

It is noted that section 1220-b of the New York State Vehicle & Traffic Law prohibits "unauthorized solicit[ation of] ground transportation services at an airport." Moreover, that statute makes a violation punishable by fine or imprisonment. It appears that the Honda Pilot herein was towed and stored by the Authority as an incident of such unlawful operation and the arrest of its operator by Port Authority police under the New York statute.

In sum, the Authority has been empowered to promulgate regulations with respect to its operations, and it has done so, to the extent relevant here, by providing for towing and storage under circumstances such as these; by requiring that towing and storage fees be payable by the vehicle's owner or operator; and by authorizing retention of the vehicle until such fees are paid. Other than imposing such obligation on the owner or operator, such regulations do not purport to address the rights or obligations of any third person having an interest in the vehicle. In other words, the Authority has not purported to confer upon itself substantive and procedural rights and obligations relating to others' liens on or forfeiture of personalty, matters that are instead provided for in certain City, State, and federal enactments (see, e.g., N.Y.C. Administrative Code § 14-140; Lien Law, Article 9; 21 U.S.C. § 881).

Precedent establishes in any event that the Authority's autonomy is limited to its "internal operations" (*Matter of Agesen v Catherwood*, 26 NY2d 521, 525). Accordingly, any unilaterally enacted New York statute applies to the Authority if such statute governs "conduct affecting external relations of the Authority" implicating New York interests (*Matter of Agesen v Catherwood*, supra, 26 NY2d 521, 525). In such connection, the *Agesen* court noted that conduct affecting the public's health and safety clearly were subject to each State's unilateral legislation, since they were "activities [that] may externally affect the public." But the *Agesen*

4

court did not thereby propose to limit such "external" matters to issues of health and safety. In other words, the *Agesen* opinion does not necessarily imply that the Authority's claim against a vehicle owner for towing and storage fees is an "internal" matter, and therefore beyond any New York unilateral enactment, even where the rights of a third person holding a lien under the law of New York may be affected. Nor would such proposition appear to stand on its own merits. In any event, the Authority's submissions indicate that it concedes the applicability of section 184 here.

The remaining question therefore is whether the Authority has the benefit of a superior lien under section 184(5) as against petitioner's possessory interest.

To answer that question in petitioner's favor, there is no need to endorse petitioner's view that the Authority has denied it a constitutionally guaranteed "hearing." The precedents cited by petitioner in such respect involved cases where, unlike here, forfeitures of vehicles were at issue, and evidentiary hearings on disputed questions of fact material to such issue were thus normal incidents of due process (*Ford Motor Credit Co. v NYC Police Dep't*, 394 F. Supp. 2d 600, *aff'd*, 503 F.3d 186; *Property Clerk, NYC Police Dep't v Aquino*, 6 Misc 3d 1031).

By contrast, the procedural lapse in this case is the Authority's failure to give petitioner notice by certified mail within the time constraints set forth in section 184. Such lapse would appear to be fatal to the Authority's claim that it can refuse to release the Honda to petitioner until the latter pays the storage fees accrued to date.

This is not to overlook the Authority's argument to the effect that petitioner's apparent receipt of actual notice from May 28, 2008, may be enough to require petitioner to pay the Authority's fees from that date into the future. But ignoring the express strictures of section 184

5

concerning notice by certified mailing would run afoul of the established principle that, as a statute in derogation of the common law, the section must be strictly construed (*Slank v Sam Dell's Dodge Corp.*, 46 AD2d 445, 447; see also *Johanns v Ficke*, 224 NY 513, 518) and that "strict compliance" with its provisions is required (*Gorman v Town of Huntington*, 2009 WL 909717 [N.Y.], 2009 N.Y. Slip Op. 02648).

To be sure, in cases where actual notice was conceded, there are precedents to the effect that strict compliance with the letter of a notice provision was not required (see, e.g., *Dellicarri v Hirschfeld*, 210 AD2d 584; *Christy v Premo*, 194 AD2d 910; *Weissman v Adler*, 187 AD2d 647). Those precedents, however, are inapposite. First, they involved performance under contracts and thus did not require the strictness demanded by a statute such as the one at issue here. Second, in each of such cases, the lack of strict compliance was a de minimus deviation, having had as a practical matter no adverse effect on the other party. Third, in at least one of such cases, the facts supported an estoppel against the other parties, barring them from insisting on strict compliance (*Dellicarri v Hirschfeld, supra*, at 585).

==The present case, by contrast, involves a statute in derogation of common law, which in turn implicates the strict-compliance principle.== Moreover, certified mailing is a critical operative aspect of the statute, which makes documented notice the touchstone for when the charges for storage begin to accrue. In other words, strict compliance with the certified mailing provision is an implicit element of the statute, since such requirement is designed to serve the interests of both parties by avoiding open questions of fact as to the amount of storage charges that have to be paid by a third party with a perfected lien. Finally, there is no basis for an estoppel here, since, unlike for example the *Dellicarri* case, petitioner cannot be said to have done anything to

6

induce the Authority to fail to give the required formal notice.

Accordingly, in view of the Authority's undisputed failure to satisfy the statute's specific requirement of "notice by certified mail," and given that "failure to mail such notice in a timely fashion shall not affect a lien for towing," and in view of the owner's default under the financing agreement, petitioner is entitled to take possession of the subject vehicle upon payment to the Authority of accrued towing charges.

The petition is granted. The Authority is ordered to release the Honda to petitioner upon the latter's payment of the Authority's fee for towing the vehicle from one part of the terminal to another.

This constitutes the decision and Judgment of the court.

Dated: April 30, 2009

ENTER: _____

J.S.C.

FILED
MAY 1 2009
NEW YORK
COUNTY CLERK'S OFFICE

7