UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

---

HVT, INC.,

Case No.: CV-15-5867 (MKB)(VMS)

Plaintiff,

-against-

PORT AUTHORITY OF NEW YORK AND NEW JERSEY,

Defendant.

---

**PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ATTORNEYS' FEES AND COSTS**

Dated: New York, New York
July 2, 2018

Respectfully submitted,

Michael A. Rosenberg (8870)
**LAW OFFICE OF MICHAEL A. ROSENBERG**
**Counsel for Plaintiff HVT, INC.**
rosenbergesq@aol.com
875 Third Avenue, 8th Floor
New York, New York 10022
Phone: (212) 972-3325

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT........................................................................ 1

STATEMENT OFACTS ........................................................................ 1

LEGAL ARGUMENT........................................................................ 1

I. INTRODUCTION........................................................................ 1

II. HOURLY RATE........................................................................ 4

III. THE OBJECTION TO THE SERVICES OF ATTORNEY MEOLA IS UNFOUNDED........................................................................ 5

IV. THE DEFENDANT'S LIMITED OBJECTION LEAVES THE MAJORITY OF HOURS UNCONTESTED........................................ 10

V. CONCLUSION........................................................................ 12

## TABLE OF CASES

**CASES** **PAGE**

*Fox v Vice*, 131 S. Ct. 2205, 2216. (2011)……………………………………………………3

*Arbor Hill Concerned Citizens v. County of Albany*, 522 F.3rd 182, 190 (2nd Cir. 2007)……………………………………………………………………………4

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 719, (5th Cir. 1974)……………4

*Missouri v Jenkins*, 491 U.S. 274, 285 (1989)………………………………………………...6

*Spanos v Skouras Theaters Corp.*, 364 F. 2d 161, 169 (2nd Cir), cert. denied 385 U.S. 987 (1966)…………………………………………………………………...7

*Dietrich v King Resources Co.*, 596 F. 2d 422, 426 (10th Cir. 1979)………………………..7

*General Motors et. al. v. The County of Nassau,* Docket No. 03 CV 1177, Eastern District of New York……………………………………………………………………8

Matter of *Cont'l Ill. Sec. Litig.*, 962 F. 2d 566, 570 (7th Cir. 1992)…………………………10

*Gibson v City of Chicago*, 873 F. Supp. 2d 975, 992 (N.D. Ill. 2012)………………………10

*Krimstock v. Kelly*, 306 F.2d 40(2002)…………………………………………………...11

**STATUES**

42 U.S.C. 1988……………………………………………………………………………6

Eastern District of New York Civil Rule 1.3 (c)……………………………………………...7

## PRELIMINARY STATEMENT

Plaintiff, HVT, INC., presents this Reply Memorandum in support of its application for an award of attorney's fees and costs. The Court previously determined by its Report and Recommendation, dated February 15, 2018 (ECF #32), adopted by Order dated March 21, 2018 (ECF #34), that the Plaintiff was the "prevailing party", and therefore, was given permission to move, by Notice of Motion, to have the Court set reasonable attorneys' fees and costs. In connection with that Motion, the Plaintiff, HVT, INC. relies upon these, and the previously submitted documents in support, together with the additional Reply Declarations and Exhibits.

## STATEMENT OF FACTS

The factual matters, incorporated by reference, and underpinning this litigation were set forth in the Motion and Cross-Motion by the litigants each requesting Summary Judgment. The Court, when issuing its Report and Recommendation capsulized the factual matters leading to a finding in Plaintiff, HVT, INC.'s favor, and denying the requested relief to the Defendant, PORT AUTHORITY, except as to a small charge for towing. As a consequence of the Court determining Plaintiff, HVT, INC. to be the prevailing party, the Court thereafter reserved to itself the assessment of entitlement by determining upon submissions by counsel, the reasonable hourly rate, and the reasonable number of hours expended by counsel in pursuit of the litigation.

## LEGAL ARGUMENTS

### I. INTRODUCTION

In opposition to the Plaintiff, HVT, INC.'s fee application, the Defendant, PORT AUTHORITY, does not dispute that Plaintiff, HVT, INC., was the prevailing party having waived any objections to the Report and Recommendation. Nor does it dispute that the Plaintiff,

notwithstanding its reiteration of the standard, and attempt to diminish counsel's efforts, dispute that Plaintiff achieved an extraordinary result. Not only was the result extraordinary in light of the outcome, but belies the assertion of the Defendant that this matter was simply a run of the mill 1983 action. The Plaintiff takes a contrary view of the Defendant's prospective of this litigation. It is of no moment, to use the Defendant's counsel's phrase that "the case was not hard fought". Counsel makes that assertion without having been the lead attorney through the processes of pleadings, discovery, Court appearances or motion practice which lead to the Declaration that Plaintiff was the prevailing party. Plaintiff, HVT, INC. successfully challenged the constitutionality of the Defendant's Rules, Regulations, practices and actions, not just over a matter of damages, but rather, more in the nature of a class action, seeking redress for an ongoing and continuing wrong. The implication to be drawn from this litigation impacts not just this Plaintiff, but all prospective Plaintiffs, innocent owners/lienholders, similarly situated, either individually or in a class. The outcome here, and the Court's Order, should stem future litigation thereby keeping the Court's Docket from being overburdened.

The Defendant, PORT AUTHORITY's, general and generic objection in opposition to this fee application is that the number of hours expended by counsel to achieve outstanding results in this matter is excessive. The Defendant conveniently overlooks both the extraordinary result obtained, and the significant constitutional implications addressed by the Court. Counsel also neglected to observe the Court's admonishment regarding the viability of the New York State Lien Law upon which the Defendant has consistently and historically relied.

Notwithstanding it having myopically missed the significance of the instant matter, the Defendant, PORT AUTHORITY, does not dispute that Plaintiff has submitted appropriate

documentation to meet its burden on its fee application. Its failure in that regard operates as a major concession of the Plaintiff's submissions. The Exhibits to the Plaintiff's moving papers are exhaustive in detailing the services rendered and the efforts and lengths to which counsel went in advocating its client's cause. Rather, the Defendant simply asserts, with a broad brush and sweeping condemnation, basically only two legal objections. In the first instance, the Defendant, PORT AUTHORITY, avers that the hourly rate of $600 requested by its counsel is too high. Thereafter, the Defendant proffers that work done by attorney Rudolph J. Meola is not worthy of compensation founded solely upon the assertion that he has not formally appeared in the case by the filing of a Notice of Appearance. This assertion, again by sweeping terms, defies logic, and is made without legal justification supported by case law or statute. The Plaintiff, HVT, INC., takes a contrary position to the Memorandum of Law submitted by the Defendant, PORT AUTHORITY, and disagrees with its counsel's position. In fact, case law is contrary to Defendant's proposition.

The Court need only look to *Fox v Vice*, 131 S. Ct. 2205, 2216. (2011), wherein the Court held:

> **We emphasize, as we have before, that the determination of fees "should not result in a second major litigation." Hensley, 461 U.S., at 437, 103 S.Ct. 1993. The fee applicant (whether a plaintiff or a defendant) must, of course, submit appropriate documentation to meet "the burden of establishing entitlement to an award." *Ibid.* But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of "the district court's superior understanding of the litigation." *Ibid.*; see Webb v. Dyer County Bd. Of Ed., 471 U.S. 234, 244, 105 S.Ct. 1923, 85 L.Ed.2d 233 (1985). We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it.** [emphasis supplied]

## II. THE HOURLY RATE

Recognizing that the instant litigation was not business as usual with respect to a 1983 concern, and in light of the significant result achieved, our attention is now turned to the consideration of what constitutes a reasonable hourly rate under the circumstances. The Courts have, and the Plaintiff, HVT, INC., adopts the position that a proper hourly rate is the amount a prospective client would be willing to pay for the legal work contemplated and to be performed, in the relevant Court, by those attorneys of its specific choosing, and in an effort to achieve a successful and meaningful result.

That client, including Plaintiff, HVT, INC., when analyzing its position, would take into consideration three primary components. That is, the client's ability and willingness to pay for counsel to pursue a designated objective; the generally acceptable range of hourly rates in the specific jurisdiction, and the level of expertise, years of experience, and quality of the attorneys being vetted for the intended undertaking. In considering fee applications, the rate and range of legal fees in the general marketplace, is just one factor for the Court's consideration. (*Arbor Hill Concerned Citizens v. County of Albany*, 522 F.3rd 182, 190 2nd Cir. 2007). In determining what rate a client would be willing to pay, the District Court should consider, among other things, the *Johnson* factors. A paramount factor is the nature and length of the relationship between the client and the attorney. (*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 719, 5th Cir. 1974)

In the fee application submitted by Plaintiff, HVT, INC., counsel went to great pains to present to the Court a detailed recitation of this Plaintiff's history and difficulty with this Defendant, and its long-standing and pervasive unconstitutional practices. That recitation, and in light of the fact that the Defendant, PORT AUTHORITY, without adequate Rules or Regulations in place, has consistently taken advantage of this Plaintiff, and those similarly situated by holding for ransom, private property without the benefit of an opportunity to be heard. That inequitable and untenable position forced and foisted upon the Plaintiff, after a lengthy period of time, into the position, and notwithstanding its substantial resources, to retain these lawyers of choice. The

Plaintiff was prepared to gamble upon the experience, expertise and diligence of these two attorneys to pursue the matter to its conclusion with the expectation of prevailing.

While the Court has had adequate opportunity to assess the range of hourly rates approved for experienced attorneys in the Eastern District of New York, it has, through many decisions, determined the range to be $350 to $790, with the lower range relevant to cases seeking redress for a single injury, and the upper range, relevant to cases of broader applicability (ie. class actions). The rate sought by Plaintiff, HVT, INC.'s, counsel of $600 per hour, is within that range of cases of broader applicability, and is not so inconsistent, or out of line, as to be either offensive or unreasonable. Plaintiff's fee application is supported by a detailed analysis and background information demonstrating that the efforts and time expended by attorneys Rosenberg and Meola fit neatly and comfortably into the category of experienced, senior attorneys, as opposed to practitioners only enjoying junior or associate level status.

In sum, Plaintiff, HVT, INC., tasked its chosen counsel, with whom it has had a long-standing relationship, predicated upon quality workmanship, with a very difficult objective. That is, Plaintiff, HVT, INC., expected counsel to end the Defendant, PORT AUTHORITY's pervasive use of its unrestricted Rules and Regulations, permitting it to operate with heretofore unfettered and unconstitutional interference with protected property. The additional side benefit obtained by this litigation inured to those other innocent owner/lienholder companies engaged in the automotive finance industry, as if there has been a class action. To achieve this objective, the Plaintiff, a major corporation, could have chosen any attorney(s) from its network of approved lawyers. It could have found the most expensive or least expensive bargain available. Instead, it selected these lawyers for both their skill, expertise and non-overreaching billing practices. For all of the reasons indicated, an hourly rate of $600 is more than reasonable for any plaintiff similarly situated, but this Plaintiff, HVT, INC., in particular. (See: *Arbor Hill, supra*.)

## III. THE OBJECTION TO THE SERVICES OF ATTORNEY MEOLA IS UNFOUNDED

Having already determined that this client, Plaintiff, HVT, INC., was both reasonable in its selection of counsel, and willing to pay counsel's reasonable hourly rate, the Defendant, without citing to any authority, boldly suggests that the legal work performed by attorney, MEOLA, is not compensable, simply because MR. MEOLA did not file a Notice of Appearance indicating a formal appearance. The Defendant, PORT AUTHORITY, inappropriately, and rather than do an extensive, line-by-line analysis of MR. MEOLA's work product, asks the Court to ignore that work product on the theory that the failure to provide a Notice of Appearance vitiates all of his services. As previously indicated, the Defendant made no real objections to the quality or quantity of the work product, ignoring the relationship between my office and Mr. Meola's, and without giving any credence to the fact that I am personally responsible for all work and matters presented to the Court. The mere fact that Mr. Meola and I are, and have been for an extended period of time, "of counsel" to each other's firm, without reference on my letterhead, is a mere distraction. There is no obligation in that regard.

The term "reasonable attorney's fee" in 42 U.S.C. 1988 does not mean that compensation is restricted to "…only work performed personally by members of the bar. Rather, the term must refer to a reasonable fee for the work product of an attorney." *Missouri v Jenkins*, 491 U.S. 274, 285 (1989). The attorney work product may be based upon the work of any number of contributors, including attorneys from the forum state, from different states, or paralegals, as long as the attorney presenting the work product himself takes full responsibility for that product. To that end, I have never denied my work product responsibility, and in fact, am exceedingly proud of it.

Nothing in New York State law bars an attorney, even from a different law firm, from collaborating and working with the attorney of record on the case. The Eastern District of New York's Civil Rules do not require all lawyers collaborating on a case to file formal Notices of Appearance. If such requirement existed, then every partner or associate of a law firm who did any work on a file would be compelled to file his or her own separate Notice of Appearance. The illogic of the Defendant's argument, if extended to its natural extreme, would likewise preclude paralegals, and other paraprofessionals, from performing any services with respect to a particular matter, and we know that not to be the case. *(Missouri v. Jenkins, supra.)* It would, in this case require James M. Begley, Esq. ("Begley") to also submit a Notice of Appearance, because it is unclear if he contributed to the defense of this matter on behalf of the PORT AUTHORITY.

To the contrary, the Eastern District of New York Civil Rule 1.3 (c) regulates only three (3) specific types of legal services mandating a formal appearance: (a) entering appearances for a party, (b) signing stipulations, or (c) receiving payments upon judgments. Indeed, in *Spanos v Skouras Theaters Corp.*, 364 F. 2d 161, 169 (2nd Cir), cert. denied 385 U.S. 987 (1966), the Court indicated that legal work provided by **even an unadmitted attorney, was compensable as long as the work was performed and overseen by a duly admitted and licensed in-state attorney**. *Dietrich v King Resources Co.*, 596 F. 2d 422, 426 (10th Cir. 1979). "The important requirement in this respect is simply that the local man must be admitted in the state and must have the ability to make, and be responsible for making, decisions for the lawyer group." (Emphasis supplied.)

In the matter before the Court, I, as attorney of record, am admitted in the State of New York, as well as the Eastern and Southern Districts of New York. At all times, I was exclusively

responsible for Plaintiff's appearance in this Court. I made all appearances, signed all pleadings and was fully responsible for all actions taken by Plaintiff, including all work product, whether performed by counsel or paraprofessional, in the form of filed documents. Rudolph J. Meola is admitted in the State of New York, even though he is not admitted in the Eastern District of New York. He is, and remains, in good standing as a duly admitted attorney. (Meola Declaration) Under the direction of *Spanos*, Mr. Meola unquestionably would be permitted to assist me in representing the Plaintiff, his client, with the proviso that he could not perform any of the three actions listed in Rule 1.3 (c) which are limited only to the attorney of record admitted in the District. The Defendant, PORT AUTHORITY, does not allege that Mr. Meola entered an appearance, or in any way purported to act as the attorney of record before this Court. In fact, the Defendant's observation that Mr. Meola remained "anonymous" confirms that Mr. Meola has diligently followed the rules by not making an appearance, and has done nothing that would be prohibited by the rules, precluding his work product and attendant compensation.

What is interesting, is that the inclusion of the Defendant's Exhibit "D". The Defendant, PORT AUTHORITY, references the action entitled *General Motors et. al. v. The County Of Nassau*, Docket No. 03 CV 1177, Eastern District of New York. That reference, bolsters the position of the Plaintiff, HVT, INC., in this matter, and confirms the *bona fides* of both myself and Mr. Meola. There is no mystery that it was Mr. Meola who had the initial relationship with the client over this matter, even though both attorneys had rendered services to the client in the past. (Meola Declaration dated May 21, 2018) Had counsel inquired of her predecessor, Margaret Taylor-Finucane ("Finucane"), she would have discovered, and it would have been revealed, that it was with Mr. Meola that Ms. Finucane dealt prior to the commencement of litigation. The

Plaintiff, HVT, INC., was, in fact, Mr. Meola's client until my retention for the commencement of the litigation.

The Defendant, PORT AUTHORITY, asserts that it has been unable to find a case that allows the work of two different law firms, in collaborating on a case, to be compensable, where one attorney handles all the formal Court appearances, while the other provides client background assistance, research and drafting support. The Defendant apparently is unaware of *Spanos*, supra, and has approached the case in reverse. A Plaintiff, such as HVT, INC. is entitled to its choice of counsel, regardless of the number of attorneys thereby employed. Unless there is a valid reason to prohibit this type of collaborative and joint effort, there is no reason why all work performed, or to be performed, should not, or could not, be allocated among participating counsel, and thereby, be compensable *in toto*.

All of the work performed by Mr. Meola in this matter, constituted behind the scenes activity such as client relations, researching, drafting, and strategic planning and consultation. All of those functions were entirely appropriate legal work for an experienced attorney, duly admitted in New York State, such as Mr. Meola, and appropriately and carefully selected by the client, in this case, Plaintiff, HVT, INC. There is nothing untoward with such practice, and case law well supports the practice.

As previously noted, no prohibition is applicable here, nor should Mr. Meola's work product be summarily dismissed as being inappropriate, inapplicable or unworthy of compensation. Consequently, the Defendant's blanket objection to the Plaintiff, HVT, INC., receiving compensation for Mr. Meola's efforts, contribution and work product, fails as a matter of law. While the issue was never important, and not raised prior, based upon Mr. Meola's good standing

within the State of New York, he would have clearly been given *pro hac vice* status, permitting his participation to a fuller extent. Additionally, his good standing then and now would allow for that circumstance to obtain admission *nunc pro tunc*.

## IV. THE DEFENDANT'S LIMITED OBJECTION LEAVES THE MAJORITY OF HOURS UNCONTESTED

Other than an attempt to eliminate Mr. Meola's efforts from the matter, the Defendant, PORT AUTHORITY, has made scant objection to, or analysis of, the services performed by Plaintiff, HVT, INC.'s, counsel. When a party claims that the hours are excessive, such claim must rest on more than "a gestalt reaction that there [i]s too much." (Matter of *Cont'l Ill. Sec. Litig*., 962 F. 2d 566, 570 (7th Cir. 1992)) When an interested party elects not to delve or raise a specific objection to the number of hours claimed, or fails to do an in depth analysis, Courts have been unsympathetic to such bare assertions, concluding that the total amount of time is not excessive. (*Gibson v City of Chicago*, 873 F. Supp. 2d 975, 992 (N.D. Ill. 2012))

Here, the Defendant, PORT AUTHORITY, without a detailed analysis, has raised only five (5) specific objections, albeit weak, to the number of hours expended by Mr. Rosenberg. Without any great degree of specificity, the Defendant believes that the hours expended on the following topics are overstated: (1) determination of venue; (2) preparing discovery responses; (3) the fee application itself; (4) non-specific, "mundane tasks", and (5) drafting a memo of law. While the Plaintiff, HVT, INC., is confident that such criticism is well-intentioned in light of its ensuing obligation, that criticism comes without the benefit of having performed the tasks enumerated. This office stands behind each and every matter represented to the Court. As lead counsel, and as a duly admitted attorney, it is my function to accept full responsibility for all that is submitted for the Court's consideration. On a personal level, I am not prone to engage in practices which would be unethical by either overreaching or exaggeration, and find the suggestion that the fee application has been padded, distasteful.

Other than those items noted above, no other hours were objected to. The Defendant, PORT AUTHORITY, having decided to forego a substantive review of the Plaintiff's counsel's contemporaneous time records, and by its limited objections, waived all further objections. Therefore, the uncontested hours should be deemed to be accepted as reasonable. (*Fox v Vice*, *supra.*) This Court, and Courts in general, should not be cast in the role of "green-eyeshade accountants." By making a broad, single stroke and sweeping declaration that all of Mr. Meola's hours should be eliminated for lack of a Notice of Appearance, the Defendant relinquished its opportunity to object to the rendering of any particular services.

As a side bar, the Defendant, PORT AUTHORITY, almost as an after-thought, raised an objection that some of the time requested by the Plaintiff for paralegal time might "overlap" attorney time. That objection, like the objection to the requested compensation for travel time, is so generic that it is difficult to respond in any meaningful way. The work of a paralegal in securing cases is far different from the work of an attorney in evaluating those cases, or subsequent cases revealed by the process of shepardizing, and the assessment of the value of those cases in light of matter at hand, or the litigation in chief.

The Court is entitled to expect the opponent of a fee application to look carefully at the proponent's submission. Here, Plaintiff and counsel, were very deliberate to make all parties cognizant of the services rendered and the actual time expended in that regard. However, if the opponent of the application does not take the time, or make an effort, the opponent should not anticipate the Court to be burdened thereby. By failing to give nothing but a cursory reading, the Defendant, PORT AUTHORITY, has conceded those services and the time spent.

The Plaintiff takes exception to, and by way of example of the Defendant's cursory reading, in its finding fault with the time spent on determining venue, the analysis of *Krimstock v. Kelly*, 306 F.2d 40(2002), and the time invested in preparing the fee application itself. As regards venue, the Defendant should not be surprised to learn that counsel and client had extensive discussions and considerations over whether the action was to be commenced in the Southern District as opposed to

the Eastern District. Both the Plaintiff and counsel had a number of concerns in that regard, all of which led to the expenditure of the time noted. Perhaps counsel has not had any prior interaction with the effects and impact of the ground-breaking decision in *Krimstock, supra.* This landmark case resulted in not one (1), but four (4) decisions impacting substantive law, as well as the choice of venue. To absorb the thrust and important implications of that case, counsel did not merely read 31 pages. Rather, lengthy consideration and analysis went into the investigation of the case in preparation for this litigation. And lastly, Plaintiff and counsel spent considerable time preparing this fee application because, other than its financial import, we did not want the Court to have to guess at exactly what services were rendered, or what time was spent on behalf of the Plaintiff, HVT, INC. We were deliberate in assembling all relevant materials for the Court's consideration, written in a cogent and coherent presentation, so as to be fully transparent and thorough.

If the opponent to this fee application could not be bothered to take the time to investigate or research as we did, it would be unfair for it to expect that the Court will do its heavy lifting. The Defendant, PORT AUTHORITY, has not an inkling of the extent Plaintiff, HVT, INC. and its counsel went to in an effort to plead and prosecute its case. The objections now raised are at best, raised out of ignorance…at worst, they are disingenuous and without basis in law or fact.

## V. CONCLUSION

Upon all of the foregoing, and as set forth in the accompanying Declarations of Rudolph J. Meola, Esq., and Michael A. Rosenberg, Esq., together with the contemporaneous time records and additional time records for this Reply, all presented as Exhibits, and these Memoranda of Law, the Plaintiff, HVT, INC., respectfully requests that the within application for attorneys' fees and costs be granted in all regards, together with such other and further relief as this Court deems just and proper, including, but not limited to, preserving Plaintiff, HVT, INC.'s, right to make further application upon the termination of the case in chief to include any additional time yet to be, or actually expended.

Dated: New York, New York
July 2, 2018

Michael A. Rosenberg (8870)
**LAW OFFICE OF MICHAEL A. ROSENBERG**
**Counsel for Plaintiff HVT, INC.**
rosenbergesq@aol.com
875 Third Avenue, 8th Floor
New York, New York 10022
Phone: (212) 972-3325